IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2005 Session

**RANDY ALAN BARNES v. AMY ROBERTSON BARNES**

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003455-03     The Honorable George H. Brown, Judge**

---

**No. W2004-01426-COA-R3-CV - Filed March 4, 2005**

---

This is a divorce case. In contemplation of a divorce grounded on irreconcilable differences, Husband and Wife entered into a Marital Dissolution Agreement. Subsequently, Husband filed a complaint for divorce, and the complaint, *inter alia*, disavowed the prior executed Marital Dissolution Agreement. The divorce case proceeded to trial, and the trial court granted the divorce on the ground of inappropriate marital conduct and enforced the Marital Dissolution Agreement, dividing the marital property and debt. Husband appeals. Because Husband-Appellant repudiated the Marital Dissolution Agreement prior to the entry of the trial court's Final Decree of Divorce, there was no agreement between the parties, and the Marital Dissolution Agreement should not have been enforced. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

William T. Winchester of Memphis for Appellant, Randy Alan Barnes

Mitchell D. Moskovitz and Adam N. Cohen of Memphis for Appellee, Amy Robertson Barnes

**OPINION**

Randy Alan Barnes ("Plaintiff," "Husband," or "Appellant") and Amy Robertson Barnes ("Defendant," "Wife," or "Appellee) were married on August 9, 1997. One child, Emily Michelle Barnes (d.o.b. 6/2/2000), was born to this marriage. On or about June 4, 2003, the parties entered into a Marital Dissolution Agreement ("MDA"), which Wife had obtained on the internet. Mr. Barnes received a copy of the MDA approximately three or four weeks prior to the June 4, 2003 execution date. Neither party was represented by counsel at the time of the execution of the MDA.

The MDA provided, *inter alia*, for Mr. Barnes to pay child support and alimony, and for a division of the marital property.

On June 18, 2003, Mr. Barnes filed a "Complaint for Absolute Divorce" against Ms. Barnes. The Complaint reads, in pertinent part, as follows:

> Plaintiff charges that:
>
> 1. Irreconcilable differences have arisen between the parties and Plaintiff is entitled to an absolute divorce from the Defendant on the grounds of irreconcilable differences. T.C.A. 36-4-101(14).
>
> 2. Defendant has been guilty of inappropriate marital conduct. T.C.A. 36-4-101(11).
>
> 3. Defendant has been guilty of adultery. T.C.A. 36-4-101(3).
>
> *                        *                        *
>
> WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:
>
> *                        *                        *
>
> 6. That the Marital Dissolution Agreement and Permanent Parenting Plan previously executed by the Plaintiff be disavowed and if filed, set aside.

On July 9, 2003, Ms. Barnes filed her "Answer to Complaint for Absolute Divorce and Counter-Complaint for Absolute Divorce" (the "Answer"). Although the Answer does not specifically mention the MDA, it does deny that Mr. Barnes is entitled to the relief sought in his Complaint, including paragraph six thereof, *see supra*. Ms. Barnes' counter-complaint does, however, pray that the trial court "equitably divide, distribute or assign the marital property in accordance with T.C.A. §36-4-121."

Following discovery and mediation, on February 21, 2004, Ms. Barnes filed a "Motion to Enforce Marital Dissolution Agreement." This Motion reads, in relevant part, as follows:

> 2. Wife alleges that such an agreement is a valid and enforceable contract, and courts are restrained from disregarding or annulling same. Matthews v. Matthews, 148 S.W.2d 3, 11 (Tenn. App. 1940).
>
> 3. Husband has testified that there are only two (2) reasons why he believes the MDA should not be enforced. (Deposition of Husband, pp. 49; 90-91). The first reason asserted by Husband is that he was

under duress when he executed the agreement (Deposition of Husband, p. 49). The second reason asserted by Husband was that he believes that Wife committed adultery after the agreement was executed. (Deposition of Husband, p. 49).

4. At the time Husband executed said MDA, Husband's emotional/psychological well being was good, and Husband was not under the care of any psychologist, psychiatrist, or social worker, because Husband did not deem same necessary. (Deposition of Husband, p. 34). Husband was employed full time as a Certified Public Accountant at the time Husband signed said MDA, and was fully capable of transporting himself to an attorney's office to review the document prior to signing same. (Deposition of Husband, p. 33).

5. Husband has testified that his only support for the contention that he signed the MDA under duress is that Wife allegedly told Husband to sign the MDA, or Husband would not see the parties' child until a Court made her bring the child back. Nevertheless, Husband admits that Husband himself had hand-written a Permanent Parenting Plan which the parties likewise executed on June 4, 2003. Moreover, Husband filed a Complaint for Absolute Divorce just two (2) weeks later, on June 18, 2003. Said Complaint makes no allegation whatsoever concerning Wife's alleged threat, nor does it allege that Husband was under any type of duress when he executed the MDA. Based upon these factors, along with those set forth in Paragraph Four (4) hereinabove, Husband cannot substantiate his allegation of duress as a matter of law.

6. Wife further submits that Husband's second basis for rescission of the contract is wholly insufficient as a matter of law. Specifically, Husband asserts he learned that Wife allegedly committed adultery after the agreement was executed. (Deposition of Husband, p. 49). Wife respectfully submits that it has long been established that adultery is not a valid defense to the enforcement of a contract. Williams v. Williams, 236 S.W. 926, 937 (Tenn. 1922). Nevertheless, Husband further testified that prior to the signing of the MDA, Husband had suspicions that Wife was committing adultery. (Deposition of Husband, p. 58).

7. Wife alleges that based upon all of the foregoing, there is no basis, as a matter of law, to rescind the MDA. Wife thus alleges that this Honorable Court should enforce the MDA in all respects, as a valid and binding contract made by and between the parties. In that the

parties have heretofore entered into a Permanent Parenting Plan, which has been filed with this Honorable Court, the only remaining issue for this Honorable Court to determine is grounds for divorce.

A hearing before the trial court was held on May 5, 2004. At this hearing, Ms. Barnes testified that she had "engaged in a relationship with another individual during the course of [the] marriage." Mr. Barnes' attorney argued that the parties' conduct throughout the litigation evinced the parties' belief that the MDA was not to be enforced. Specifically, Mr. Barnes asserts that the parties' submission to mediation constituted a repudiation of the MDA; that the fact that the parties engaged in discovery provides evidence that there was no meeting of the minds in the MDA. Mr. Barnes also argued that he was under duress at the time he signed the MDA in that Ms. Barnes had allegedly threatened to move away with the child. Mr. Barnes further contends that Wife's adultery should negate the MDA.

On May 18, 2004, the trial court entered its "Order on Motion to Enforce Marital Dissolution Agreement." This Order reads, in pertinent part, as follows:

> 1. This Honorable Court expressly rejects the notion that Plaintiff/Counter-Defendant, Randy Barnes (hereinafter "Husband") was under duress at the time he executed the Marital Dissolution Agreement on June 4, 2003.
>
> 2. This Honorable Court expressly finds that adultery is not a suitable defense to the enforcement of the parties' Marital Dissolution Agreement.
>
> 3. This Honorable Court expressly rejects the notion that Wife's request for and/or submission to mediation constitutes a rescission or repudiation by Wife of the Marital Dissolution Agreement executed by the parties on June 4, 2003.
>
> 4. In that this Honorable Court has found that Husband has no valid defense to the enforcement of the Marital Dissolution Agreement, this Honorable Court expressly finds that the Marital Dissolution Agreement executed by the parties on June 4, 2003 is a valid, enforceable contract....

On the same day, the trial court entered a "Final Decree of Absolute Divorce" (the "Final Decree"), granting the parties a divorce on the grounds of inappropriate marital conduct. Because the trial court found the MDA to be a "valid, enforceable contract," the issue of marital assets and liabilities was resolved in accordance with the MDA.

Mr. Barnes appeals from the Final Decree and raises three issues for review which we perceive to constitute the single issue of whether the trial court erred in enforcing the Marital Dissolution Agreement executed by the parties prior to the filing of the divorce complaint.

To the extent that the Final Decree adopts the MDA, it is a consent judgment (i.e. the division of marital property and debt is, in fact, an enforcement of the agreement between these parties as evidenced by the MDA). Consequently, it appears to this Court that the real issue presented by this appeal is whether the trial court was in a position to enter a valid consent judgment when it readily appears, from the record, that there was no agreement between the parties at the time the judgment was entered. In our opinion, this was error on the part of the trial court.

From the record, it is undisputed that, although Mr. Barnes signed the MDA on June 4, 2003, he expressed his repudiation of the MDA fourteen days later when he filed his Complaint for divorce on grounds of irreconcilable differences, inappropriate marital conduct, and adultery and specifically prayed that "the Marital Dissolution Agreement...previously executed ...be disavowed and if filed, set aside." This prayer for relief functioned to put all parties and the trial court on notice that Mr. Barnes was not in agreement with Ms. Barnes concerning the MDA.

This court is of the opinion that the resolution of this issue is governed by the principles set forth by our Supreme Court in the case of *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn.1987). *Harbor* involved a suit and a countersuit wherein plaintiff sought specific performance of an alleged real estate contract along with an injunction against a threatened foreclosure action under an existing deed of trust. On the date the case was set for trial the parties announced to the court that they had reached an agreement and would submit an order of compromise and dismissal. The terms of the compromise were not announced to the court. Before entry of an order in the case, it was brought to the court's attention that defendant had withdrawn his consent to the compromise. The court nonetheless entered an Order of Compromise and Dismissal. Defendant moved to vacate the order and to reschedule the case for trial on the merits, but the trial court overruled the motion and once again dismissed the case with prejudice. *Id*.

In reversing the trial court, the *Harbour* Court set forth its rationale as follows:

> The resolution of disputes by agreement of the parties is to be encouraged. But a valid consent judgment can not be entered by a court when one party withdraws his consent and this fact is communicated to the court prior to entry of the judgment.

> The general rule defining the power of a court to enter a consent judgment is set forth in 49 C.J.S. Judgments § 174(b), as follows:

>> The power of the court to render a judgment by consent is dependent on the existence of the consent

of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.

*Id*. at 599 (citations omitted).

The ***Harbour*** Court further states:

A valid consent judgment cannot be rendered by a court when the consent of one of the parties thereto is wanting. It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court.

*Id*. at 600 (citing ***Burnaman v. Heaton***, 240 S.W.2d 288, 291 (Tex.1951)).

In ***Elrod v. Elrod***, No. 03A01-9108-GS-260, 1991 WL 238263 (Tenn. Ct. App. Nov. 18, 1991), the Eastern Section of this Court applied the principles announced in ***Harbour*** to a domestic relations case. In ***Elrod***, the parties negotiated a settlement of all issues prior to trial which they orally announced to the court. At that time the parties had not reduced their agreement to writing in the form of a marital dissolution agreement. No further proceedings were held until a final judgment was presented to the court for approval, at which time the trial court was aware that plaintiff was no longer in agreement. The trial court entered a final judgment of divorce over plaintiff's objections. In ***Elrod***, as in this case, the trial judge knew before he entered the final decree of divorce that a party had repudiated the agreement. The ***Elrod*** court found that the trial judge was without authority to enter a final decree according to the agreement. *Id*. at *1. We are of the same opinion in this case.

For the foregoing reasons, we reverse the Final Decree to the extent that it enforces or incorporates the MDA. We remand for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed against the Appellee, Amy Robertson Barnes.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.